Court is now in session. Okay, thank you, Ms. Trice, and welcome, counsel. Just a reminder that although we are on video, you should not be photographing this or videoing it or recording it in any way. The other thing is to please remember that when you are talking about the record, giving us a record site helps, so we can refer to that. And remember that rebuttal is for 2020-20221 International Energy versus United Energy Group, and we will begin with Mr. Bennett for United Energy Group. May it please the court. Good morning, my name is Michael Bennett. I represent the appellant United Energy Group Limited. Can the court hear me just fine? Excellent, thank you. This appeal asks the court to overturn an order of the district court which vacated two arbitration awards that dismissed claims brought by the appellee International Energy Ventures Management on litigation conduct waiver grounds. I will refer to my client, United Energy Group, as UEG and to the appellee as IEVM. That's the way the parties have most commonly over the course of this litigation referred to the parties. The case has, as you know if you've seen the briefs, a very long procedural history which is covered in detail in our brief, and I just want to touch on it briefly. The history began with IEVM's filing of a lawsuit in state court in 2013 in which IEVM demanded a jury trial and paid the jury fee. UEG removed that case to federal court. This is the second time this case has come before this court. The first time was on an appeal by IEVM, and that appeal was of Judge Kenneth Hoyt's denial of IEVM's motion to remand their state court lawsuit back to state court and of his dismissal of IEVM's claims brought in court for lack of personal jurisdiction. This appeal, the first appeal of Judge Hoyt's rulings, was exclusively for the purpose of trying to preserve IEVM's right to bring its claims in of arbitration. I want to be clear on that. The opinion in the prior appeal at 818 F3rd 193 explicitly says that you all understood that the suit could have been brought properly with personal jurisdiction to force arbitration. Did you all concede that? In other and that was the purpose of it, that there would have been jurisdiction for that, personal jurisdiction? Yes, Your Honor, and that's a really important point because in the appeal, this is the first appeal, in IEVM's brief, they cited those cases which stand for that proposition, which is that a court has limited jurisdiction. If there's an arbitration agreement that specifies arbitration will occur in a particular form, the court has limited jurisdiction to compel that arbitration, even if it lacks jurisdiction on the merits of the claims. And in their opening appellate brief on this first appeal, they cited to those cases that stood for that proposition. The problem is that they argued that they stood for a much broader proposition that such an arbitration clause amounted to consent to personal jurisdiction in court. So to be clear, if you say I consent to arbitration in Texas, then you are consenting A, to arbitration in Texas, and B, to a lawsuit compelling arbitration in Texas, but not C, to a lawsuit in Texas, just a general lawsuit in Texas. If you sign an arbitration agreement specifying arbitration in Texas, then a court in Texas, according to Fifth Circuit authority, possesses jurisdiction to enter an order compelling that arbitration if necessary, even if it lacks jurisdiction to hear the merits of the case. And the jurisdiction, though, that we're talking about is personal jurisdiction, not subject matter. That's correct, personal. So you all are, what you're saying is that the law is that I can consent to personal jurisdiction in Nebraska, where I've never been, but that doesn't mean, for X, but that doesn't mean I'm now subject to jurisdiction in Nebraska for everything under the sun. Well, that's true, but I think the point is that in pursuing this because it's in the record, we cite our response brief in the first appeal, and that, our brief begins at 2471 in the record, and the relevant portion of our brief responding to IEVM's brief on the first appeal is 2521, pages 2521 and 2522 of the record, and here's where we address the these authorities permit a court to exercise jurisdiction for purposes of compelling arbitration, but the consent to arbitrate in Texas through an arbitration agreement does not constitute, as IEVM is arguing, broader consent to the jurisdiction of the Texas courts on the merits, and that's exactly what IEVM was arguing. I mean, just to, because again, we always run out of time, it seemed to me that the district court ultimately, it's a very succinct ruling, but ultimately really just ruled on detriment and prejudice. In other words, if I assume for the sake of argument that I agree with the district court about the who decides question, so it was up to the court. When I read that August hearing, which is the only hearing in front of the district court, the only case focused on is the one I think in his footnote, the Perry Holmes decision. I'm sure you know it well. Yes, I do. Isn't the difficulty for your position to us what then Justice Willett points out in his dissent, which is if what was decided here was no prejudice, that would be reviewed for clear error by an appellate court, and I think I remember his dissent making the point that we may think there was waiver. We may disagree in terms of what's necessary to get into court, but once the district court says no prejudice, what's our standard of review? Do you remember Justice Willett's dissent in Perry Holmes? I have to confess that I have spent a lot of time with the Perry Holmes case but have not focused so much on its sentence, for which I apologize. Okay, but it makes sense to you what I'm asking, right? If I'm right, the district court here said you didn't show him clear error, and two, what's the record site for the prejudice you offered to him that didn't convince him? Okay, well, the record site, the evidence of error is that we presented ample evidence of prejudice in the form of... But ample never helps me. Just tell me your best record proof you gave to the district court that you were prejudiced. You know, I apologize. I'm not going to have a record site that I can come up with. Well, then what about the legal question? Do you agree that the standard of review is for clear error as to a prejudice finding or not? I think even if it is clear error, even if the standard is clear error, there was prejudice in this case clearly, and it was clear error for the court to find that there was no prejudice. And I suppose what I would refer the court to, and even though I understand the argument of Appellee about the argument they make about deference to the arbitrator, in this case, I do think that the court should take into account... Well, let me back up and give you a record site. I apologize. But the record site I want to give you is the discussion in the appeal, in the first appeal, of the fact that that appeal, and this is totally unaddressed by the district court, that that appeal was only for the purpose of preserving the right to pursue their claims in 2521 and 2522. So is the prejudice there, the cost of all of that litigation? That's exactly right. The prejudice is two years of litigation, all the way up to the Fifth Circuit, the cost of the appeal, which served no purpose other than to try... We had to defend our right not to be hailed into courts in Texas. Our only way of doing that was defending against this appeal, which was initiated by IEVM. That appeal was not necessary to pursuing their claims in arbitration, as they have proved multiple times by initiating arbitrations. They initiated the McGowan arbitration, and after the denial of their appeal, they initiated the Davis arbitration. Some of the older cases, case law, and I guess there is a state-federal... Two questions here, too. Is it state or federal law that controls here? Because when I look at Texas' 2018 Cash Biz case, they don't seem to be very enthusiastic about our KBR case. They say waiver can't occur just with filing suit. Well, it's federal law that governs, and one of the reasons that federal law governs is set forth in the Perry Holmes case, in which Perry Holmes, which is sort of the landmark Texas case, but explicitly acknowledges that what Texas is doing is adopting the federal standard. But you know the Cash Biz decision, right? They're a little bit critical of where our law is going. Well, is that a case cited in the Cash Biz case? The case cited by IVM on this point is the Afton case, which is another Fifth Circuit case, which I think is readily distinguishable. But, Your Honor, if I could, because I think we're now in the discussion of whether Judge Hughes was clearly erroneous in failing to find litigation conduct waiver, I think very important is that the court look at the McGowan arbitration. And the McGowan arbitration was, and I think there are three reasons that there's no way that this opinion can stand, and it's because of the McGowan arbitration. Number one, IVM initiated the McGowan arbitration in 2014, proving they didn't need a court order to compel arbitration. And in that arbitration, they submitted the issue of litigation conduct waiver to McGowan. And, you know, there's authority cited in our brief about submission. You can agree to arbitrate something without it being in your contract. You can submit it. And I would refer the court to the brief that IVM filed, which is cited in our brief, where they petitioned on the motion to dismiss. When we got in the arbitration with McGowan, we moved to dismiss the arbitration on grounds that it wasn't arbitrable and on litigation conduct waiver. IVM responded to that brief. That's in the record at 1451 to 1464. And critically, you will not find in this brief anywhere that they objected to McGowan deciding the question of litigation conduct waiver. But then what do you do with the fact that Davis found otherwise? They asked him to decide it. They asked him to decide it. And that is Section 4. I'm sorry. Excuse me. Mr. Bennett, can you hear me? Yes. My question is, what do you do? It seems to me that both sides like to rely on whatever part of any arbitrator's decision in this case that helps them, and then they dismiss everything else. I'm not sure we can really do that. So how do you deal with the fact that Davis said McGowan didn't have the authority? Well, I mean, you have to make this decision because this is a decision about whether someone has properly preserved an objection to an arbitration award. There's no doubt that McGowan entered an arbitration award. And the question is, is that binding? That's now before you. But aren't you all bound by Davis's determination on that? That's my question. Well, because as a matter of law under the Federal Arbitration Act, IEVM cannot challenge an arbitration award. In fact, they haven't. They've never even challenged the McGowan award. The only way they can challenge that award is through a timely motion to vacate on grounds that McGowan exceeded his powers by addressing the issue of litigation conduct waiver. And McGowan in his award, in fact, said, he said, the parties haven't raised with me whether I have the authority to decide the question. And I conclude that I do. And here's why. The parties disagree. They can take this up with the court. And they didn't. That's a waiver. It's done. I mean, it doesn't matter what Davis does after that. That operates as a statute of limitations. Why doesn't it matter what Davis does? Because the Federal Arbitration Act, it lends finality to arbitral awards and bars challenging our entered arbitration awards, collateral attack on arbitration awards without properly challenging them pursuant to the procedures of the Federal Arbitration Act. So, so that's exactly what we're arguing. One other thing, if you were to win here on whatever ground, okay, how is it that IEVM can finally get the money they're owed? And that's good. And I'm sorry, that was in my introduction and I just didn't get there before being interrupted. I'd like to point the court to a quote in the introduction of their brief, which I think is very telling. It's kind of how they open their brief. They say, since 2013, international has wanted only one thing, a fair opportunity to litigate this case in court or an arbitral tribunal somewhere. Number one, this indicates that one of their goals was litigate their claims in court. It's an open admission in the first opening paragraph of their brief. Two, it is fundamentally misleading because the only places they've ever tried to pursue their claims are in court in Texas or an arbitration in Texas. My client is a Hong Kong based oil and gas company that has no US contacts. The undisputed facts are that IEVM reached out to my client in China. Because you're out of time. I had a very specific question. Are you saying they need to go to Hong Kong? Okay. That's it. There's maybe other places they could go to, but one place is court in Hong Kong. Okay. Thank you. All right. You deserve time for a button. Ms. Barger. May it please the court, Justice Barger for International Energy. Okay. I was going to tell him that I knew himself, but he did. Go ahead. I'm sorry. Since 2013, International has been trying to litigate its claims and get paid for the money it's owed. Obviously, that's a concession and a supplemental contract that was signed. I would like to address some questions that were asked, and then I will proceed to the points. Judge Haynes, you asked if the appeal could have been bought if there was jurisdiction or arbitration. That was a big issue. I'd like to point out that they contested this. They specifically stated at record site 447 that their appearance is only for the limited matter of challenging personal jurisdiction, not for the purposes of moving or ruling on the motion to compel. That is why they asked for Judge Hoyt to stay the deadlines, suspend the deadlines. They took that position. You all were trying to get personal jurisdiction for the lawsuit, not for the arbitration, right? Yes, but what I'm trying to say is they are now trying to take a different position and saying, look, there is jurisdiction or there could have been jurisdiction for the purposes of just arbitration, but that's not the position or that's not the concession or that's not the position that they were taking back in 2013 and 2014. Well, as I read, and I think it's page 212, I'm having trouble reading my own writing, UEG admits that there is jurisdiction for the limited purpose of compelling arbitration. So it seems that anyway, our prior panel thought limited jurisdiction of the federal courts to say go to arbitration here in Texas, but they were challenging the broader, you know, let's go to state court and have a jury trial. It may not have been when it actually reached the level of the appeal. I was just wanting to point out to the court that that wasn't always their position, which is why they sought for the stay and the suspension of the deadlines. So nothing could really happen with the arbitration. From the very beginning, they were fighting and opposing arbitration, even right after we filed the lawsuit. After we filed the lawsuit, they took a position, even when we put in the joint status conference that we were going to initiate arbitration, possibly that they were going to oppose it. So they have been imposing arbitration and they have been challenging personal jurisdiction. And so we haven't been able to litigate anywhere. Um, have you tried Hong Kong? I haven't tried litigating in Hong Kong. Yes. Not that I'm aware of your honor. Okay. That's not what you said anywhere. I'm sorry. Not that I'm aware of. Um, as Judge Holtman, Holtman pointed out, I would like to address the prejudice issue. I do think that's a big issue here. I do think the holding of Judge Hughes was very succinct on the prejudice. I don't think they've shown prejudice. What would they do to show prejudice? I think that they're going to have to, like most of the courts that are finding the prejudice, they have to show that there has been a specific unfairness caused by delay, expense or damage to its interest or legal position. And I think that finding it, let's talk about the first two. Um, how many years, how many years of litigation would constitute delay in your view? Well, and the delay in the, in most of the cases we fit within, like, if you're looking at the from the time of filing a lawsuit in September, 2013, to the time of actually demanding and initiating the arbitration, that was within four months. I mean, that's all within the timeframe of, you know, most of the cases that say, you know, even some cases go as far as saying two years or eight months of delay is not prejudice. So if you're looking at this court, sorry, I didn't mean to interrupt. No, no, no. If you look at this court's three prongs under the Petroleum Pipe case, where you're looking at the amount of pretrial activity related to what claims are subject to the arbitration, the time and expense incurred by a party opposing arbitration and defending against litigation efforts and the delay in asserting the right to arbitrate. Well, here, nothing was happening. I mean, they, they sought the stay with Judge White and they sought several orders saying suspend the deadlines, rule on our personal jurisdiction before you even reach anything else. So that's the question this way. What would be a good authority for your side that filing two lawsuits in state court, litigating in front of two different federal district judges in federal court, two panels of the Fifth Circuit and one petition for rehearing over the course of seven years is not a delay or an expense that triggers litigation conduct waiver. All of it at your best. I get it. They've been opposing you. Obviously, you wouldn't expect them to consent. The question is, all of those proceedings were brought by your client, both of the lawsuits in state court, both of the fights in the federal district court, both of the proceedings in the circuit. I suppose you're the appellee here, but we're still fighting about stuff that you were doing on a lawsuit that you filed in state court in 2016, the second go around after our first decision. And just striking is a lot of delay and a lot of lawsuits. And so I'm having a hard time understanding where you would draw the line between delay and expense. It doesn't trigger the waiver. Well, even if this court looks at the timeframe of the entire seven years and not from the delay, which at the delay at the time of initiating the first arbitration, which they then moved very, very quickly to, at that time with Mike Allen as for litigation conduct waiver. So for looking at that time period, if we went back to there, or even if we were looking at the seven years, um, some of the, the, there's the best authorities. I think, uh, that the Bruce Terminix case, I think you can, this court can also look at the Joseph Chris versus Rossi case. I think this court can look at, um, these cases involve two, two state court suits, two appeals to the fifth circuit petition for rehearing in seven years. I guess that's what I'm trying to get at. There isn't that, um, there isn't a specific case on that. I'm saying that if you look at all of the factors on waiver litigation conduct, and if you're looking at, I have no case, I'm going to say that they're specific as to multiple different, you know, if there's two, two litigation and two arbitrations, I think here, we've been fighting, we've been, we initiated arbitration fairly quickly after they started challenging the personal jurisdiction. And I think that if you look at the prejudice and I'd like to address the KBR case, because I think the KBR case is a very important case to address. Um, and I think one of the big things is that case is very different or very distinguishable than here. I mean, in that case, KBR removed, she filed a motion for remand. She waited 10 months after filing suits. So for, if we're looking at just the first part of the time period, if we go back and look at 2013 to 2014, most of everything else we were doing was fighting this jurisdictional battle or responding. And I think this court's SEDCO opinion where they found no prejudice or they found there was no prejudice over a jurisdictional or a long fought jurisdictional fight is also a pretty good authority. But in the KBR case, she waited 10 months and she raised it after a deposition of herself and a third party. And then only after she had received the adverse ruling on the preemption of her state state claims. Um, and I think that it's, it's, it's pretty key that here we don't, we don't have those, we don't have those facts here. There was nothing happening. Discovery was a lot of the delay was because, you know, there was a period of time where it took two years, but, but just say from 2018 and 2020, you know, between the briefing and the motion to vacate and judge Hughes 2020 orders. So some of it was not even a delay of, you know, IBM or IEVM or international's fault. Um, part of my challenge with this case, and it may not be your fault is, is the district court's ruling is extremely, um, reduced. Um, it doesn't address the relevant fifth circuit case law. Um, and when I read the hearing, it seemed like that was on purpose. Um, but, but I guess I have a three part question. One is, do you agree that the ruling doesn't present us with the question of substantial invocation of the courts? What I think of the KBR four B issue that instead it was based on a finding of no prejudice. I think when you look at his various things on pages six and well, four, four to five, yeah. Um, it, it seems to focus you're, you're correct. Okay. Well, if that's true, what's your best authority that we actually do review only for but, but it may not be correct. Is that, is that what's your best authority that the prejudice finding, because when I hear you discussing with judge Oldham, you seem to be articulating a rule of law that sounds more legal, which is there was no litigation as to discovery or merits. And even if litigation over jurisdiction is extensive, it sounded to me like you were saying delay there wouldn't count. Is there, are you making a legal argument or are you saying that there's no clear error as to the factual determination of cost and delay? I'm saying there's no clear error as to the factual determination of the underlying facts of judge Hughes finding of no prejudice. Then you have a big difficulty because, you know, he doesn't, he just says he uses a metaphor cat and mouse. He doesn't address either the arbitrators extensive discussion of the facts judge Oldham just highlighted, which is we're talking years. There there's clearly delay. And, and, and related to that, when I looked at Mr. Mr. Bennett's comments in the hearing in August of 2017, Mr. Bennett was saying loud and clear right there. We don't want to be in court. So it sounds like opposing council has detriment. They don't want to be there. I think I maybe I misunderstood your question. I mean, I think you do review his finding for clear air, just as if you were in the KBR case where this court judge Haynes found that it was, there was no clear air that the district court found no prejudice. So here, I think you can look at that. I think you can look at the which cites the first option case, which says if an issue is treated as factual, the district court's decision is final and less clearly erroneous. A finding is clearly erroneous quote, when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. And then when the judge doesn't really address the evidence, the judge seems to almost be making a legal ruling with this sentence about the bulk of litigation's activity arose from dismissals and appeals on jurisdictional grout grounds, never coming close to addressing the core issues. And in other words, this is a game of cat and mouse and that doesn't waive arbitration. That sounds like a legal ruling, not a determination doesn't talk about the cost, doesn't set out whether the cost was caused by challenges to litigation and so on. It seems completely inconsistent with Nicholas versus KBR, which is not cited here in this discussion. You're right. The order, obviously the underlying order and Nicholas KBR was much more extensive and obviously the court's analysis on KBR. And I think that the KBR case, for the reasons that I articulated, there are some very distinct points. Even if you look at this court's opinion in October, which cites the Nicholas case, which Judge Haynes was on the panel, the Sabatelli versus Baylor Scott case, that one there was 16 months. They said one of the key points in that opinion, that citing the Nicholas point is that you shouldn't be able to sit back to see what's going to happen in court, get an adverse ruling and then get a second bite of the apple. We haven't even gotten one bite of the apple. They have been fighting with us and contesting us on not just jurisdiction, but arbitration since 2013. And I think Judge Hughes is trying to get there with rebutting that presumption requires some inherent unfairness caused by the delay, expense or damage to United's legal position. And I think his factual finding is that merely filing a lawsuit and conducting little discovery did not prejudice. I mean, I think this court can also look at it. There's no discussion of what the cost was. There's no discussion of what the delay was, whether it's the four months you're citing or the several years by the time he does this ruling, six, seven years. There's no discussion of that. So we don't know. I mean, it almost sounds like he's saying you have to have an outcome that went the other way. And that is not the ruling in these other cases. It is certainly a waiver if you did lose and then try to go to arbitration, obviously. But that's not what Nicholas requires. It doesn't require that far. It looked at cost, cost, period. Even if you ultimately are doing all right, the cost is a problem. Right? I mean, I think that there are cases out there that also say that just because there's a substantial cost, that doesn't necessarily mean that it was unfair to their position or unfair to them when they were the ones, they were the contesting jurisdiction and what we were trying to do. But that's not discussed here. I mean, that's what we're looking for. We're looking for weighing all of that. You know, you've got a lot of factors. And if we're going to give any findings, we need some fact findings, don't we? And I'm sort of missing that because I don't think cat and mouse is a fact finding. So should we send it back for findings of that? I think that's one option. I mean, I don't I think you could, but I think this court could I think the judge Hughes in his order, even if it's succinct and his findings, I think when you look at this court's authorities and if you look at, you know, when waiver is found and when waiver isn't found. And if you look at the, you know, the key point is, was there a substantial litigation on the merits? Were the merits of these claims litigated? The merits of the claims were never litigated. There was no discovery done on the merits of the claims. It was solely based on this jurisdictional fight and issue. And when you look at this court, I'd also direct this court to the patent grading versus Gantz case out of the Fourth Circuit, 380, you know, F third 200. That one also says that a party's activities in responding to the other side that did not address the substantive merits of the case were not considered in evaluating prejudice. The court was unwilling to include activity that the moving party did not initiate. So I think that there are a lot of things that this court can look at it, just at the terms at the time that the motion to remand was filed, they were already fighting us personal jurisdiction and arbitration. And I think that that is another key point that I do think that that is a distinguishing point to the, to the KBR opinion where the facts. What is your response to why, you know, you're happy to agree with judge and with arbitrator Davis on setting aside arbitrator McGowan, but otherwise we should ignore arbitrator Davis. How can we resolve the fact that y'all both seem to only want to cite the arbitrators that to the extent they agree with you, but if they don't, they didn't have authority. They didn't have power. They didn't have this. They didn't have that. And I'm sorry, but I don't think that's really how things work. So how can we be deferential to judge Davis's or arbitrator Davis's ruling about arbitrator McGowan without being deferential to the rest of what arbitrator Davis found? I think that the court can look at the whole, the, whether it's the deputy. Well, I think the whole argument is, you know, should we have challenged it back then, you know, within the three months and they're saying, look, you should have challenged it. If you didn't challenge it, you waived it. It's preclusive. I think the McGowan award didn't really even need to be handled by judge Hughes. I think that it was dismissed by without prejudice. It doesn't have preclusive effect. It can't be binding by race judicata for, for that reason. So it wasn't, it wasn't being litigated or a full adjudication on, on the issue or the merits. And it was dismissed without prejudice. And I, I think that when, when Davis says, look, there is a specific thing as to whether litigation conduct waiver can be decided by the courts or the arbitrators and all of the authorities, including the vine case and the Perry homes case say there has to be some sort of clear and unmistakable intent that you are going to arbitrate the litigation conduct waiver. And the parties have to agree. And if the parties didn't agree, which they didn't agree, they never agreed. And he points that out. Davis points that out in his footnotes. And the record side is 1009. And pages six and seven are the key points of his, you know, basically saying, look, at the beginning, maybe, maybe international said that it was an issue for the arbitrator, although that was never conceded. If you look at international's briefing in the first arbitration, there, it was just kind of a very novel or global statement that, you know, if something's falls within arbitration, or if it's that something's arbitrable, then it can be decided by the arbitrator, not litigation conduct. So if you look at all that, I think what judge Davis was saying, where you don't have to get to the deference, this court can make its own finding and say, nobody ever agreed. The parties never agreed. They both in the McAllen, they one side was saying arbitrator, one side was saying court. And now in the Davis, he points that out and says now they say, Eugene says the arbitrator should resolve it. And international saying no, this is definitely an issue for the court unless there's clear and Thank you. Your time is expired. Appreciate the argument. All right. We all hear the rebuttal. Thank you, your honor. Let me take a couple of points quickly. One, let me address this point about deference. And what do you, what do you defer to? And the parties are arguing both to defer to different parts of the arbitrators decisions. One, I would say my about deference rather than the persuasive value of the very specific findings of the two arbitrators and contrast those with what judge Hughes did. Uh, the court has noted the absence of any apparent analysis of the facts, uh, uh, of prejudice of delay, any discussion of those, although those were all extensively briefed and that stands in stark contrast to two arbitrators who've addressed this. And on the basis of the facts presented, made two specific, very specific findings of prejudice as for record evidence of the prejudice that we suffered. And I apologize for not being quick enough on my feet and the argument in chief, I really would the court to pages 48 and 49 of our brief where we cite the facts of the actions that we were required to take in response to IEVM, which had nothing to do with pursuing their claims and arbitration. They filed a lawsuit seeking a jury trial. They opposed remand of the case. They, they sought to remand the case to state court. What did that have to do with pursuing their We had to prepare a number of filings in federal court that were completely unnecessary because remember, IEVM is the claimant. They have the unilateral power to bring an arbitration and they've done it three times and we've participated in their arbitrations that they initiated. So they didn't need to bring these court actions. And it's very clear that these of batting off litigation. How do you answer the right to litigate their claims? How do you answer her argument that we filed a motion to compel arbitration, you know, four months in? Well, y'all just run with that. Well, we moved to state. Well, one, we don't think the claims are subject to the arbitration clause, but nothing stopped them from initiating the arbitration, which in fact they did, but only after judge Hoyt denied their motion to remand. And we'd fully briefed a motion to dismiss for lack of personal jurisdiction. Now, what we asked is not one specific to emotion to compel arbitration, the parties in the joint case status in the joint case management order that was entered by judge Hoyt at the beginning of the case agree that everything would be put that the substantive activity in the case would be put on hold pending his ruling on the motion to dismiss. And honestly, you know how personal jurisdiction works. There's all kinds of arguments and opposing party can make that we have consented to personal jurisdiction or waived it by our conduct. If we're not constantly maintaining that objection, we thought our constitutional right was to have this jurisdictional question determined that we could not be hailed to a jury trial in Texas. And we wanted that issue decided not to have this case put on the back burner pending arbitration. And so we didn't fight arbitration. As a matter of fact, eventually when they determined they might not have a court avenue for their claims, IVM initiated arbitration and we participated and we asserted our rights in arbitration. And we have participated in every arbitration that they have initiated. You know, looking at the ruling again, trying to sort of read tea leaves, it does seem to me that he he didn't look at any of the arbitrators evidences to prejudice, which are pretty obvious, but implicit in that is a legal determination that I don't need to count cost and delay for litigation activity that doesn't relate to merits or discovery. And I think that's wrong, Judge Higginson. And I think I can I think Perry Holmes, I think you can look at Perry Holmes and see that that's wrong. And that's one of the points we made about Judge Hughes appoint employing the wrong standard of prejudice. But if you look at the Perry Holmes case and how Perry Holmes defines prejudice, first of all, there's been this reference to expense delay or or detriment to the merits of the case. That's an or delay and expense are sufficient to support to support legal prejudice. And we have presented evidence of in spades. Judge Oldham has talked about the tremendous delay. And we've talked about the about the cost, about all these things that incurred obvious legal expenses. I think the point is how long, you know, you know, that the evidence of prejudice is there. It wasn't considered by the court. And I just in closing, because I see that I'm out of time. I really intended to spend more of my time in argument, talking to you about the McGowan decision. And I think that this is very important. And I think maybe there's there's three points here. But the main one, the main one is that they had to challenge McGowan. Okay, you definitely briefed that. Thankfully, we are aware of that argument. I appreciate both your arguments. And the case is submitted, I will say that we will decide the case and the issues presented straight up and fairly. But I'm hopeful that over the seven years, and maybe now, after you hang up from this zoom meeting, y'all will talk to each other about resolving this case. That seems to be something that got lost along the path. But thank you both. And the case is under submission, and you are excused. Thank you.